2018 PA Super 327

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES MAURICE CANNAVO, JR., | |
| Appellant | No. 3729 EDA 2017 |

Appeal from the Judgment of Sentence Entered June 22, 2017
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-51-CR-0004483-2015

BEFORE:  BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.*

CONCURRING OPINION BY BENDER, P.J.E.:          **FILED DECEMBER 3, 2018**

I agree with the Majority that Appellant was not entitled to a castle-doctrine jury instruction because he was engaged in criminal activity when he shot the victim. ***See*** 18 Pa.C.S. § 505(b)(2.2)(iii). I write separately to express my disagreement with the Majority's primary conclusion that Appellant was not entitled to the castle-doctrine jury instruction as a matter of law due to lack of evidence establishing the condition set forth in Subsection 2.1(i). To the contrary, I believe Appellant's own testimony provided a sufficient factual basis to issue the instruction pursuant to that provision.

It is undisputed that Appellant possessed a subjective belief that an unlawful and forceful entry was occurring. ***See*** Majority Opinion at 8. Thus,

---

* Former Justice specially assigned to the Superior Court.

the only remaining issue with regard to Subsection 2.1 was whether there was evidence that the "person against whom the force is used is in the process of unlawfully and forcefully entering … a dwelling, residence or occupied vehicle[.]" 18 Pa.C.S. § 505(2.1)(i). The Majority agrees with the trial court that "there was no evidence presented indicating … the victim was in the process of unlawfully and forcefully entering the carriage house." Majority Opinion at 8-9. The record belies this conclusion.

As the Majority concedes, there need only be "some evidence, from whatever source," to justify the castle-doctrine instruction. *Id.* at 8 (quoting **Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001)). However, in rejecting the instruction, the trial court simply disregarded Appellant's testimony when it stated that the "only 'evidence' that the victim was attempting to break into the carriage house is [Appellant]'s uncorroborated testimony of his subjective belief that the victim was attempting to break in, which is contradicted by the physical evidence at the scene." Trial Court Opinion, 12/19/17, at 6. There is much to unpack from this statement.

First, there is no requirement set forth in the text of the statute that evidence offered to satisfy Subsection 2.1(i) must be 'corroborated.' Any such rule would appear absurd in light of the fact that the uncorroborated testimony of a solitary witness is sufficient to secure a conviction under the beyond-a-reasonable-doubt standard. **See Commonwealth. v. Johnson**, 180 A.3d 474, 481 (Pa. Super. 2018) (holding that "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so

- 2 -

long as that testimony can address and, in fact, addresses, every element of the charged crime."). Under the some-evidence-from-whatever-source standard, applicable here, Appellant's own testimony must be sufficient to invoke the castle-doctrine instruction, so long as that testimony satisfies, or potentially satisfies, the statutory elements set forth in Subsections 2.1(i) and 2.1(ii). Nevertheless, other evidence in this case corroborated Appellant's testimony as to relevant facts pertinent to Subsection 2.1(i), at least in part, as discussed below.

Second, Appellant did not merely testify as to his subjective belief. Although Appellant testified that he **thought** the victim and his cohorts were breaking into the carriage house, he also offered several factual observations that promoted that belief. The pertinent portion of Appellant's testimony is as follows:

> When I was awoken, I saw a group of people pounding on my door. I yelled who is it? Who is it? They kept pounding. And then I actually saw one of them shoulder my door with their shoulder and then one of them ran into my door and dropped kicked it. At that point, I realized people were breaking in.

N.T. Trial, 3/24/17, at 149-50.

Only the final sentence of the above testimony constitutes Appellant's subjective belief. Otherwise, the preceding sentences detail Appellant's direct observations, not his subjective conclusions about those observations. The jury was free to reject his version of events, but the trial court was not. Testimony that people escalated from pounding on a door, to shouldering and kicking that door, while refusing to answer the pleas from the occupant,

- 3 -

certainly constitutes at least "some evidence, from whatever source," **Torres**, **supra**, that those people were "in the process of unlawfully and forcefully entering" Appellant's home, 18 Pa.C.S. § 505(2.1)(i). Shockingly, neither the Majority nor the trial court mention this testimony in their respective opinions.

The trial court spends much of its opinion explaining how this gang of 8-10 inebriated persons failed to corroborate Appellant's version of events, which, as noted above, is irrelevant to the applicable standard here, as Appellant's testimony needed no corroboration to invoke the castle-doctrine instruction. Nevertheless, their testimony did corroborate Appellant's version but for two critical facts: the shouldering and kicking of the door. While these facts are essential to establishing that the drunken gang outside of Appellant's door was attempting to unlawfully gain entry therein (whereas that element is not met if they had only knocked loudly), those facts require no corroboration under the applicable standard. Appellant's testimony was enough.

Third, contrary to the court's conclusion that the physical evidence contradicted Appellant's version of events, the trial court simply disregarded corroborative physical evidence. The court indicates that a boot print was found on the door at issue. TCO at 6. Inexplicably, the trial court then dismisses this evidence, which corroborates Appellant's claim that the door was kicked, because a locksmith testified that he "was unable to *definitively* link any damage to the door, including what appears to be a boot print, to the incident that caused the shooting." **Id.** (emphasis added). Whether the boot

print was "definitively" linked to the incident is irrelevant unless the trial court was assessing the weight or credibility of that evidence, which it could not do under the some-evidence-from-whatever-source standard.

In sum, I believe the trial court's refusal to issue a castle-doctrine instruction on the specific basis that Appellant had failed to offer evidence of the condition set forth in Subsection 2.1(i) was clearly erroneous. Nevertheless, because I agree with the Majority that Appellant's illegal possession of a firearm at the time of the shooting precluded him from invoking the castle-doctrine instruction under Subsection 2.2(iii), I concur in the result reached by the Majority's opinion.